UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12421-RGS

HECTOR SANTIAGO

v.

LORI COSTA and ERIN WYLIE

MEMORANDUM AND ORDER ON LORI COSTA'S
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

June 3, 2019

STEARNS, D.J.

Plaintiff Hector Santiago brought this *pro se* Complaint pursuant to 42 U.S.C. § 1983, against defendants Lori Costa and Erin Wylie alleging that they, acting under the color of law, "retaliated against [him] when he invoked the petitioning clause of the First Amendment." Compl. at 1. Santiago also names Costa and Wylie in their individual capacities. Santiago states that he has "fully exhausted all available administrative remedies pursuant to Mass. Gen. Laws ch. 127 §§ 38E and 38F; and 42 U.S.C. § 1997(e)." *Id.*

BACKGROUND

NEADS is a private organization that trains and places service dogs for deaf and disabled Americans. NEADS runs the Prison Pup Partnership in

various correctional institutions throughout New England. The Partnership employs inmate volunteers to train dogs to become service animals. During the week, the dog/trainee lives with his or her assigned inmate in a single cell designated for the program. On weekends, the dogs are housed by private citizens (Weekend Puppy Raisers or WPRs) who pick them up and deliver them back to the prison. The prisoner handlers "are model inmates with exceptional institutional records." Costa Aff. ¶ 7. The number of inmates who want to participate in the program exceeds the available spots. "The handler[s] serve at will and can be removed from the program at any time at the discretion of staff." *Id.* ¶ 8.

Santiago is in the custody of the Massachusetts Department of Correction (DOC) at MCI-Norfolk and was an inmate dog handler in the NEADS program from November of 2008 through January of 2010. Santiago "took a leave of absence from the program in order to finish his degree at Boston University and returned to NEADS in March of 2013." Compl. ¶ 5. Defendant Lori Costa is a DOC employee serving as the liaison to the NEADS program at MCI-Norfolk. Compl. ¶ 2. Defendant Erin Wylie is employed by NEADS as a trainer and, on its behalf, conducts the Prison Pup Partnership at MCI-Norfolk.

In March of 2017, Costa and Wylie took note of Santiago's perceived shortcomings as a dog handler, including his failure to timely deliver his dog Montana to his weekend partner ("forcing the WPR to wait for an extended, unacceptable length of time"), as well as Montana's poor classroom performance. Costa Aff. ¶ 14. Costa states that Wylie "urged [her] to remove Mr. Santiago from the program," and that Wylie "had decided that she did not intend to give [him] another dog to train." *Id.*

On the morning of June 6, 2017, Santiago and several other inmate trainers were working with their dogs in the two NEADS-designated classrooms on the second floor of the Voc-Ed building at MCI-Norfolk. Building security officer John Hunter accused Santiago of loitering in the hallway outside the NEADS classroom. Santiago attempted to explain that he was practicing "stay" commands with Montana and had left the classroom as part of the training. Santiago avers that "Officer Hunter threw his hands into Santiago's face and yelled (with profanities) that he did not want to hear an explanation. Officer Hunter then walked into another NEADS classroom and berated the trainers within for excessive noise." Compl. ¶ 17; *see also* Cintron Aff. ¶¶ 18-19. Joshua Cintron, one of the inmate trainers, states that Hunter called him into the hallway and "threw his hands in [his] face as if he were about to hit [him] and threatened [him] with a disciplinary report if

3

[he] could not maintain an acceptable level of noise in the classroom." *Id.* ¶ 17. Santiago, Cintron, and several other trainers went across the hall to Costa's office seeking her support, "accusing Officer Hunter of misconduct," and asking Costa to explain to him the dog-training techniques that they were practicing. Compl. ¶ 18; *see also* Cintron Aff. ¶ 22. Unwilling to become involved, Costa told them that Hunter's actions were beyond her control.

That afternoon Costa reported the incident, in writing and verbally, to her superiors.[1] The following day she discussed the incident with the Deputy Superintendent, and on June 8, 2017, with the Director of Treatment. At that point, Costa and Wylie jointly decided to remove Santiago from the Prison Pup Partnership.

On June 9, 2017, Santiago filed two grievances – one against Hunter and another against Costa for "ignor[ing] his plea for help," and "not report[ing] the incident," when he was "in crisis." Costa Aff. - Ex. B. Cintron also filed a grievance against Hunter. Costa was told by several unnamed sources that Santiago had been part of unauthorized group meetings in the dog yards, including one on Saturday June 10, 2017, where he encouraged

---

[1] Santiago acknowledges in his Opposition that "[t]he issuance of an incident report may, at the discretion of Costa and Wylie, be grounds for removal from the NEADS program." Opp'n, Dkt #44 ¶ 9.

other NEADS inmates to file grievances against Costa for her failure to intercede with Hunter on their behalf.

On June 14, 2017, Santiago was dismissed from the NEADS program and, as a result, moved from the designated housing unit where the dog handlers reside.[2] Costa testified that "[o]nce Mr. Santiago was removed from the program, there was a dramatic improvement in the performance of Montana." *Id.* ¶ 40. However, Montana's subsequent handler testified that, when he received her, she was "current in her training at or above levels required for weeks 1-19 . . . [and] graduated normally and without any remedial actions needed." Gonzalez Aff. ¶¶ 7-8. Cintron was also removed from NEADS.[3]

On June 25, 2017, Santiago filed another grievance "for the retaliatory actions of being terminated from the NEADS program and transfer to

---

[2] Santiago contends that "[a]ll housing units have 'inmate handlers' and their dogs." Opp'n ¶ 37. Santiago's removal from NEADS did not forfeit his housing seniority or his single-cell eligibility. He also kept his job as an inmate cleaner in the administration building.

[3] With his Opposition, Santiago submits the affidavit of John Gomes. Gomes testifies that he was also a NEADS trainer and an elected inmate to the Norfolk Inmate Council where he brought "issues of concern" to the MCI administration and staff. Gomes Aff. ¶ 5. When Gomes became aware of several inmates being terminated from NEADS after they had filed grievances against Costa, he spoke to Wylie and, ultimately, the Superintendent about their concerns of retaliation. *Id.* ¶¶ 9, 11. On August 24, 2017, Gomes was terminated from the NEADS program. *Id.* ¶¶ 12-16.

5

another unit." Compl. ¶ 25. Deputy Superintendent Kristi Ladouceur denied Santiago's grievance finding that he was "terminated based on [his] overall performance and NEADS request." Costa Aff. - Ex. E. Costa testified that she had no knowledge of Santiago's grievance against her until "at least July [of] 2017."[4] Costa Aff. ¶ 25.

On September 21, 2017, Santiago received a disciplinary report for the incident involving Officer Hunter. On October 13, 2017, the Institutional Grievance Coordinator (IGC) rejected Santiago's grievance against Costa as false, finding that she had appropriately reported the incident. Santiago's appeal was denied.

Santiago filed this action on November 20, 2018, averring that all his grievances were denied and that his administrative remedies had been fully exhausted. His Complaint contains a single count under 42 U.S.C. § 1983 asserting "retaliation for reporting staff misconduct and filing grievances." Compl. ¶ 29. Santiago asserts that "[i]f not for the defendants' retaliatory actions, [he] would have likely remained a trainer with the NEADS program." *Id.* ¶ 30.

---

[4] Santiago disputes this sworn testimony asserting that Costa had access to the Inmate Management System where the grievances are recorded and that "her principle [job] duties include maintaining 'constant, ongoing, communication' with staff." Opp'n ¶ 25.

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id.* A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

---

[5] Costa filed her dispositive motion as a "motion to dismiss and/or for Summary Judgment." Dkt # 32. As Santiago's Opposition consists of several affidavits with attached exhibits, the court reviews the motion as one for summary judgment.

Santiago alleges that Costa and Wylie retaliated against him for filing the grievance against Costa by dismissing him from the Prison Pup Partnership, in violation of his First Amendment rights. To make out a retaliation claim under the First Amendment, a plaintiff must show that he engaged in speech or conduct that is protected; that the state took an adverse action against him; and that there is a causal link between the protected speech and the adverse action. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). Because of the "but for" link requirement, "[e]ven [where correction officials] had an impermissible reason for disciplining the plaintiff, they are not liable if they also had an independent, permissible reason for doing so." *Puleio v. Comm'r of Corr.*, 52 Mass. App. Ct. 302, 310 (2001), citing *Scarpa v. Ponte*, 638 F. Supp. 1019, 1029 (D. Mass. 1986); *see also McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (demonstrating a legitimate penological purpose for actions of correction officials means that an inmate cannot show that the adverse actions would not have occurred "but for" the alleged wrongful conduct); *Shabazz v. Cole*, 69 F. Supp. 2d 177, 198 (D. Mass. 1999) ("[An inmate] cannot get to the jury if defendants produce evidence of a legitimate reason such that they would have disciplined [him] even in the absence of the grievance."). As the First Circuit has cautioned, "[b]ecause prisoner retaliation claims are easily fabricated and pose a substantial risk of

unwarranted judicial intrusion into matters of general prison administration, courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011).

Costa concedes that Santiago's filing of a grievance is constitutionally protected activity. As to the second element, adverse action by the state, it must be "a retaliatory adverse act" that is more than *de minimis*. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). As explained in *Morris,* an act is not *de minimis* if it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* at 685-686; *see also Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action."); *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (holding that an inmate subjected to retaliatory disciplinary charges and subsequent punishment that would deter an inmate of ordinary firmness from exercising his First Amendment rights may be entitled to relief under section 1983.). In this regard, the First Circuit has found that an inmate of "ordinary firmness" would not be deterred in the exercise of his First Amendment rights where a disciplinary charge was filed against him, provided he could defend himself

against the charge and that there is no indication that such a defense would be futile.⁶ *See Starr v. Dube*, 334 Fed. App'x 341, 343 (1st Cir. 2009).

Santiago does not allege that the disciplinary action against him was knowingly false or that his appeals were not taken seriously by DOC. Nor does the court find, without more, that removal from the NEADS program (a voluntary activity subject to at-will dismissal) presents an adverse act of sufficient severity to support a retaliation claim, especially where Santiago had only a month left in his training of Montana, and where Wylie had previously determined not to renew his participation in the program.⁷ *But see Peixoto v. Russo*, 2016 WL 7410774, at *4 (D. Mass. Dec. 22, 2016) ("A reasonable jury could find that the cumulative effect of the adverse actions Peixoto alleges, including confiscation of personal property and removal from the NEADS Program which he was involved in for a substantial period

---

⁶ Far from deterring Santiago from exercising his First Amendment rights, after he was informed on June 14, 2017 that he would no longer participate in the NEADS program, he filed two informal complaints on June 16, 2017 (as part of his two June 9, 2017 grievances – one against Hunter and one against Costa arising out of the June 6 encounter with Hunter), submitted another formal grievance on June 25, 2017, along with a third formal grievance on July 12, 2017, and on October 18, 2017, filed an appeal of IGC's decision on his grievance.

⁷ Significantly, Santiago's removal from the program and associated housing transfer did not affect his housing seniority or single-cell eligibility.

of time, would deter an inmate of 'ordinary firmness' from engaging in communications with the media.").

Even if this court accepted Santiago's dismissal from NEADS as satisfying the second prong – an adverse action by the state – he fails to demonstrate that the adverse action would not have occurred "but for" the alleged wrongful conduct. *See McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979) (noting that "the requirement of a 'but for' showing together with the wide latitude afforded prison officials . . . may make summary judgment particularly appropriate."). Costa's legitimate penological reasons for Santiago's dismissal from the program – his failure to comply with NEADS rules regarding the timely delivery of his dog to the WPR, giving his dog medication without authorization, and committing insufficient time to training – precludes a finding of "but for" causation. More telling, Costa testified that she had no knowledge of Santiago's grievance against her at the time she and Wylie determined to discharge him from the program, an assertion that is not rebutted in the record.[8] Further, as Santiago was found guilty of a disciplinary report on September 21, 2017, he would have been

---

[8] Santiago's allegation that Costa had computer access to the Inmate Management System does not, when considered alone, create a material dispute of fact to counter her sworn testimony that she had no knowledge of his grievance against her when she dismissed Santiago from NEADS.

disqualified from either accepting or continuing in the program in any event. Costa Aff. ¶ 36.

## ORDER

For the foregoing reasons, Costa's motion for summary judgment is ALLOWED.

SO ORDERED.

/s/ Richard G. Stearns  
UNITED STATES DISTRICT JUDGE